UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

SARAH ODAWARE WHITE (#319932)            CIVIL ACTION

VERSUS

CARE PROVIDER MRS. MOORE            NO. 11-0574-JJB-RLB

## NOTICE

    Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

    In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

    ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

    Signed in Baton Rouge, Louisiana, on May 9, 2013.

                                                   RICHARD L. BOURGEOIS, JR.
                                                   UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

SARAH ODAWARE WHITE (#319932)                               CIVIL ACTION

VERSUS

CARE PROVIDER MRS. MOORE                                    NO. 11-0574-JJB-RLB

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on the parties' cross-motions for summary judgment, rec.doc.nos. 25 and 27.

The pro se plaintiff, an inmate previously incarcerated at the Louisiana Correctional Institute for Women ("LCIW"), St. Gabriel, Louisiana, filed this action pursuant to 42 U.S.C. § 1983 against Nurse Carolyn Moore at LCIW, complaining that defendant Moore subjected the plaintiff and other inmates to deliberate medical indifference at that facility. Although the plaintiff named only Nurse Moore as a defendant herein, the Warden of LCIW, Jim Rogers, has also appeared in this proceeding and has joined in the instant motion.[1]

---

1.   In her original Complaint, the plaintiff named only Nurse Moore as a defendant, but the Clerk of this Court inadvertently included LCIW Warden Jim Rogers as a defendant herein and thereafter issued summons to both defendants. See rec.doc.no. 13. In thereafter completing and returning a copy of Form USM-285 to the United States Marshal's Office – for the purpose of providing the names and addresses of persons to be served – the plaintiff again named only Nurse Moore as a defendant. See rec.doc.no. 17. Notwithstanding, both Nurse Moore and Warden Rogers thereafter appeared in this proceeding, and Warden Rogers has joined in the instant Motion for Summary Judgment. It is clear, however, based on the above recitation, that Warden Rogers should not be included as a defendant in this proceeding and is entitled to dismissal as a matter of law. Further, in the alternative, to the extent that the appearance of Warden Rogers may be interpreted as a waiver of the foregoing deficiency, the Court finds that the plaintiff has made no factual allegations whatever relative to Warden Rogers and that there is no suggestion that Warden Rogers has had any personal or direct involvement in the plaintiff's medical care at LCIW. Inasmuch as the law is clear that "[a] supervisor may not be held liable for a civil rights violation under any theory of respondeat superior or vicarious

The plaintiff moves for summary judgment relying upon the pleadings and, presumably, documentation submitted by her in connection with a previous motion for summary judgment which she filed herein, see rec.doc.nos. 18 and 19.

The defendants move for summary judgment, relying upon the pleadings, a Statement of Undisputed Facts, certified copies of the plaintiff's administrative remedy proceedings, and the affidavit of Rhonda Z. Weldon.

Pursuant to well-established legal principles, summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Rule 56, Federal Rules of Civil Procedure. Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A party moving for summary judgment must inform the Court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no such genuine issue of material fact. Celotex Corporation v. Catrett, supra. If the moving party carries its burden of proof under Rule 56, the opposing party must direct the Court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor. Anderson v. Liberty Lobby, Inc., supra. This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence. Little v. Liquid Air Corp., 37 F.3d 1069 (5th Cir. 1994). Rather,

---

liability," Bell v. Livingston, 356 Fed.Appx. 715 (5th Cir. 2009), and inasmuch as the plaintiff has not asserted that her alleged improper medical care at LCIW is the result of any affirmative wrongful policy for which Warden Rogers may be found responsible, see Lozano v. Smith, 718 F.2d 756, at 768 (5th Cir. 1983), Warden Rogers is entitled to dismissal for this reason as well.

Rule 56 mandates that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. Celotex, supra. Summary judgment is appropriate in any case where the evidence is so weak or tenuous on essential facts that the evidence could not support a judgment in favor of the non-moving party. Little v. Liquid Air Corp., supra, 37 F.3d at 1076. In resolving a motion for summary judgment, the Court must review the facts and inferences in the light most favorable to the non-moving party, and the Court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes. International Shortstop, Inc. v. Rally's, Inc., 939 F.2d 1257 (5th Cir. 1994), cert. denied, 502 U.S. 1059, 112 S.Ct. 936, 117 L.Ed.2d 107 (1992).

In her Complaint, the plaintiff alleged that while confined at LCIW, she was in "much need" of treatment by a physician for a condition which was causing pain to her left foot. When a family member allegedly called to inquire about the plaintiff's treatment, the family member was incorrectly informed by a prison official (not named as a defendant herein) that the plaintiff had already been seen by a physician.[2]

In response to the plaintiff's allegations, the defendants first assert that the plaintiff has failed to exhaust administrative remedies, as mandated by 42 U.S.C. § 1997e, relative to the claim asserted herein. Pursuant to this statute, the plaintiff was required to exhaust administrative remedies available to her at the prison prior to commencing a lawsuit in federal

---

2.  The plaintiff also alleged in her Complaint that a co-inmate at LCIW was provided with improper care at LCIW and that such improper care resulted in the death of the co-inmate. However, inasmuch as pro se litigants have no standing to assert the civil rights of third parties injured by a defendant's alleged unlawful conduct, Coon v. Ledbetter, 780 F.2d 1158 (5th Cir. 1986), this claim is not properly before the Court and must be dismissed.

court relative to prison conditions.  This provision is mandatory and applies broadly to "all suits about prison life".  Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983, 152 L.ed.2d 12 (2002).  Further, a prisoner must exhaust administrative remedies by complying with applicable prison grievance procedures before filing a lawsuit relative to prison conditions.  Johnson v. Johnson, 385 F.3d 503 (5th Cir. 2004).  Not only must the prisoner exhaust all available remedies, but such exhaustion must be proper, including compliance with an agency's deadlines and other critical procedural rules.  Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006).  The primary purpose of the administrative exhaustion requirement is to provide fair notice to prison officials of an inmate's specific complaints so as to provide "'time and opportunity to address complaints internally.'"  Johnson v. Johnson, supra, quoting Porter v. Nussle, supra.

     The Court declines to find that the plaintiff has failed to exhaust administrative remedies relative to the claim asserted herein.  Specifically, the competent summary judgment evidence on file and in the record reflects that the plaintiff submitted an administrative grievance to prison officials on or about April 25, 2011 (Grievance No. LCIW-2011-144), wherein she complained that she had "something" on her left foot which was causing her pain, that x-rays had been taken, but that she had not yet been seen by a physician.[3]  She prayed to be provided with open-toed shoes pending a consultation with a physician.  This grievance was accepted into the administrative system at LCIW and, on May 31, 2011, a First Step Response was provided by prison officials, denying the grievance upon a finding that the plaintiff had received and was

---

     3.   The plaintiff filed a second grievance on or about May 23, 2011 (Grievance No. LCIW-2011-149), complaining that defendant Moore had refused to provide the plaintiff with open-toe shoes.  That grievance was rejected on May 26, 2011, because "established rules and procedures [had] not been followed", specifically because the plaintiff had not specified a "date of incident."

receiving appropriate medical care for her complaints. Specifically, the First Step Response stated:

> On 4/18/11, you reported a "serious" problem to the side of your left foot where a knot rose.... The nurse noted redness and swelling to the left side of your left foot. On 4/20/11, you reported that your closed toe shoes were hurting both the burr on your left foot and the in-grown toe nail on your left foot. you were seen on 5/03/11 by Nurse Moore. You refused the pain medication, Indocin. The x-ray showed no fracture or dislocation and a bipartite tibial sesamoid was noted. Nurse Moore saw you on 5/23/11 and wrote no limping when walking, no problems with ambulation and no swelling to your foot. You again refused all meds but Ibuprofen. The LCIW Medical Director reviewed your chart and noted that there is no medical need for open toe shoes.

See rec.doc.no. 27-6 at p. 2. On June 1, 2011, the plaintiff timely appealed this Response to the Second Step of the administrative process, specifically to the Office of the Secretary, Louisiana Department of Public Safety and Corrections, by mailing a copy of her administrative appeal to that office. According to the rules applicable to the prison administrative remedy procedure in Louisiana, the Secretary had 45 days from "receipt" of the plaintiff's appeal to file a response thereto. See 22 La. Admin. Code, Part I, § 325(J)(2). These rules further provide that, upon passage of the time allowed for a response at any step of the administrative process, the inmate may proceed unilaterally to the next step thereof. See 22 La. Admin. Code, Part I, § 325(J)(4). The record in the instant case reflects that after submitting her administrative appeal to prison officials on June 1, 2011, the plaintiff waited 50 days, i.e., five days more than the 45 days allowed to prison officials to provide a response, before signing her Complaint and submitting it to this Court for filing on July 20, 2011.[4] The defendants assert, however, that the plaintiff's

---

[4]. The date that an inmate plaintiff submits a pleading to prison officials for transmission to the Court is the presumptive date of filing of the pleading, not the date upon which the pleading is ultimately received and docketed in the district court. See Cooper v. Brookshire, 70 F.3d 377 (5th Cir. 1995). Accordingly, this Court often utilizes the date upon which an inmate pleading is signed as the presumptive date of filing.

administrative appeal was not received in the Secretary's office until June 10, 2011, which date, if accurate, would render the Second Step Response timely under prison rules, i.e., issued within 45 days of receipt, and would render the plaintiff's lawsuit in this Court premature because submitted prior to administrative exhaustion.

Inasmuch as the exhaustion of administrative remedies is not a jurisdictional requirement, Woodford v. Ngo, supra, the exhaustion requirement may arguably be subject to certain defenses such as equitable tolling. Dillon v. Rogers, 596 F.3d 260 (5th Cir. 2010) (acknowledging that "we have held that estoppel provides a basis for excusing a prisoner's failure to exhaust administrative remedies"). In the instant case, having timely submitted her administrative appeal at the Second Step of the administrative process on June 1, 2011, the plaintiff allowed the Secretary 45 days, as permitted by regulation for a response, together with an additional 5 days, before she unilaterally proceeded to file her Complaint in this Court. There is no indication that the plaintiff had any way of knowing on what date her administrative appeal was received in the Secretary's office. In the Court's view, it was arguably reasonable for the plaintiff to assume that her June 1, 2011, administrative appeal would be received in the Secretary's office within 5 days of submission thereof. Had it been so received, the plaintiff's Complaint, filed in this Court more than 45 days after such receipt, would be considered timely and would not be considered barred by the administrative exhaustion requirement. Although the Second Step Response to the plaintiff's grievance states that the plaintiff's appeal was received in the Secretary's Office on June 10, 2011, the defendants have not provided a date-stamp, affidavit or other competent evidence from administration officials to corroborate the date of receipt stated in the instant case, and in the Court's experience, the dates stated in First and Second Step Response forms in prison administrative proceedings are not always accurate. In the interest of fairness, therefore, and in

the absence of an evidentiary showing by the defendants regarding the date that the plaintiff's appeal was in fact received in the Secretary's office, the Court is not inclined to conclusively determine that the plaintiff has failed to exhaust administrative relative to her claim of medical mistreatment.

Notwithstanding the foregoing, the Court next conducts a substantive review of the plaintiff's claim and concludes that the plaintiff will be unable to establish in this case that defendant Moore was deliberately indifferent to the plaintiff's serious medical needs.

In order for an inmate-plaintiff to prevail on a claim that her constitutional rights have been violated by the provision of improper or inadequate medical care, she must allege and show that appropriate care has been denied and that the denial constituted "deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); Johnson v. Treen, 759 F.2d 1236 (5th Cir. 1985). Whether the plaintiff received the treatment or accommodation which she believes she should have is not the issue. Estelle v. Gamble, supra; Woodall v. Foti, 648 F.2d 268 (5th Cir. 1981). Nor do negligence, neglect, medical malpractice or unsuccessful medical treatment give rise to a § 1983 cause of action. Varnado v. Lynaugh, 920 F.2d 320 (5th Cir. 1991); Johnson v. Treen, supra. Rather, "subjective recklessness as used in the criminal law" is the appropriate definition of "deliberate indifference" under the Eighth Amendment. Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). As stated in Farmer, to be liable on a claim of deliberate indifference, an official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837, 114 S.Ct. at 1979. The deliberate indifference standard sets a very high bar: the plaintiff must establish that the defendant "refused to treat [her], ignored [her] complaints, intentionally treated [her] incorrectly, or engaged in any

similar conduct that would clearly evince a wanton disregard for any serious medical needs." Domino v. Texas Dept. of Criminal Justice, 239 F.3d 752 (5th Cir. 2001).

Applying the foregoing standard, it appears clear that the plaintiff's medical complaints at LCIW were not ignored, that she received medical attention for her complaints, and that if anything, her claim is one of mere negligence or, at most, medical malpractice, neither of which, as noted above, is a claim cognizable under § 1983. The plaintiff repeatedly refers in her pleadings to the defendant's alleged "neglect" in response to the plaintiff's complaints, see, e.g., rec.doc.no. 28 at p. 3 (wherein the plaintiff asserts that she is "suing Mrs. Moore for neglect"); rec.doc.no. 25 at p. 1 (referring to defendant Moore's "neglect"). And while the plaintiff also asserts that the actions of defendant Moore amounted to an intentional or deliberate refusal to provide medical treatment, this assertion is entirely conclusory and is not supported by the record before the Court. To the contrary, in the plaintiff's initial grievance filed relative to this matter, the plaintiff acknowledged that in response to her complaints, x-rays had been taken for the purpose of evaluating her foot pain. Moreoever, in responding to that grievance, prison officials noted that the plaintiff had been seen by Nurse Moore on April 18, April 20, May 3, and May 23, 2011, in response to these complaints. In a subsequent grievance filed on May 23, 2011, the plaintiff acknowledged that defendant Moore had referred the plaintiff to be seen by a physician "Sing". See rec.doc.no. 16-4. The plaintiff also concedes that she was noted to exhibit a "bipartite tibial sesamoid" by x-ray, was provided with Ibuprofen by defendant Moore, and was offered an additional pain medication which she refused to take at that time. The medical records appended to the plaintiff's administrative record further reflect that although the plaintiff initially exhibited redness and swelling to her left foot in April, 2011, see rec.doc.no. 27-6 at p. 10, Nurse Moore later noted, on May 3 and 23, 2011, that there was no observed

swelling and that the plaintiff was not limping or exhibiting any obvious difficulty walking, see id. at pp. 5 and 8.  It was further noted in the medical record generated on the latter date that there was "no need medically for open toe shoes," see id. at p. 4.  The exhibits attached to the plaintiff's prior motion for summary judgment, see attachments to rec.doc.no. 18, also reflect that subsequent medical attention was provided to her, independent of the treatment provided by defendant Moore, and that the plaintiff's complaint is principally that she did not receive the treatment or care that she wished.  Specifically, the plaintiff's exhibits, consisting largely of correspondence between the plaintiff and prison officials, reflect that Nurse Moore in fact referred the plaintiff to be seen by a physician in May, 2011, see rec.doc.no. 18 at pp. 9 and 15, and although a consultation with a physician did not take place as soon as the plaintiff wished, there is no indication that this delay was attributable to the fault of defendant Moore, see id. at p. 17 (acknowledging that a Dr. Clark, not defendant Moore, was responsible for cancelling 2 of the plaintiff's scheduled appointments).  The plaintiff further acknowledges that she spoke with a Dr. Singh at LCIW on or about July 18, 2011, see id. at p. 7, spoke with a Dr. Kohn at LCIW at some point prior to August 5, 2011, see id. at p. 15, spoke to a Dr. Clark at LCIW on or about August 10, 2011, id. at p. 9, and was seen by Dr. Clark on September 6 and October 24, 2011, relative to her complaints, id. at pp. 18 and 27.  At the October 24, 2011, consultation with Dr. Clark, the physician advised the plaintiff of the results of a blood test, informed the plaintiff of a diagnosis of osteoarthritis, and admittedly provided the plaintiff with a duty status, limiting the plaintiff to working only half days and allowing the plaintiff to sleep in a bottom bunk, id., at p. 30.[5]  The plaintiff has further conceded that defendant Moore scheduled additional blood tests,

---

5.   Although the plaintiff complains that this duty status was improperly revoked by defendant Moore on December 1, 2011, that claim is not before the Court because it occurred

see rec.doc.no. 25 at p. 2, attempted to arrange for the plaintiff to be seen by an outside specialist, id., and in fact arranged for a video consultation with a specialist on an unstated date, rec.doc.no. 28 at p. 3. In short, it appears clear that the plaintiff's medical complaints were not ignored and that she received substantial medical attention while confined at LCIW.[6] Accordingly, while the plaintiff was unhappy with the level of care provided to her, with the alleged mis-diagnosis of her condition, and with delays attendant to seeing physicians, this unhappiness does not elevate her claim to one of constitutional dimension. The defendants' Motion for Summary Judgment, therefore, should be granted, dismissing the plaintiff's claim of deliberate medical indifference, with prejudice.

Finally, inasmuch as the plaintiff has now been released from confinement at LCIW, her claim for declaratory and injunctive relief, seeking to be transferred to another facility, seeking additional medical care, and requesting that defendant Moore be terminated from employment at that facility, has been rendered moot by such release and is no longer properly before the Court. See, e.g., Herman v. Holiday, 238 F.3d 660 (5th Cir. 2001) (holding that an inmate's transfer from an offending institution normally "render[s] ... claims for declaratory and injunctive relief moot"). This aspect of the plaintiff's lawsuit, therefore, is also subject to dismissal.

---

after the filing of the Complaint in this case and was therefore not administratively exhausted prior to the filing of the Complaint herein. The plaintiff concedes, in any event, that she was subsequently provided with another duty status which allowed her to sit while working at LCIW, see rec.doc.no. 25 at p. 2.

6. Although the defendant has not provided the Court with certified copies of the plaintiff's complete medical records, the Court is able to provide the foregoing recitation regarding treatment through a review of medical records appended to the plaintiff's administrative remedy proceedings and exhibits submitted by the plaintiff in support of her prior motion for summary judgment, see rec.doc.nos. 18 and 27-6.

## RECOMMENDATION

It is recommended that the plaintiff's cross-motion for summary judgment, rec.doc.no. 25, be denied, and that the defendants' cross-motion for summary judgment, rec.doc.no. 27, be granted, dismissing the plaintiff's claims asserted against the defendants, with prejudice.

Signed in Baton Rouge, Louisiana, on May 9, 2013.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**